UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JUSTIN VILORIA,                                    **COMPLAINT**

                                                                               **24 cv 3456**

                                                                               **ECF Case**

                    Plaintiff,
        vs.

CITY OF NEW YORK,
ARHENIS LOPEZESTEVEZ,
PHILIP ROBINSON, JOSE FIGUEIREDO,
TIMOTHY HOWELL, RAMON SALCEDO,    **JURY TRIAL DEMANDED**
in their individual and official capacities,

                  Defendants.
-------------------------------------------------------------x

Plaintiff Justin Viloria, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from various civil rights violations against Justin Viloria ("Plaintiff" or "Viloria") by New York City police officers.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations.  Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and

the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. The individually named defendants, Police Officers Arhenis Lopezestevez, Philip Robinson, Jose Figueiredo, Timothy Howell, and Ramon Salcedo (collectively, the "individual defendants"), are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

6. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 33rd Precinct.

7. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

8. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

9. In the early morning hours of June 18, 2021, Viloria and his pregnant girlfriend, Ashly Ramos ("Ramos"), were together in their rented room in 548 West 164 Street in Manhattan, Apartment 1G (the "Apartment").

10. Ramos was pregnant and dressed in her sleeping clothes – just underwear and a tank top shirt.

11. Ramos and Viloria were renting their room from Ruth Hedian ("Hedian"), who in the preceding months demanded that they leave the room, harassing, menacing, and taking them to Housing Court in order to achieve that effect.

12. At one point, after an unlawful eviction attempt, police officers came to the Apartment and instructed Hedian that her tenants had rights, that it was illegal to force them out.

13. After Hedian initiated a housing court proceeding, and as part of the resolution of that proceeding, Viloria and Ramos agreed to move out of the Apartment by September 2021.

14. But that was not soon enough for Hedian, and since Hedian could not lawfully get Ramos and Viloria out of her apartment as quickly as she wished, she resorted to violence.

15. Around 1:00 a.m. on June 18, 2021, Hedian sent her two sons to attack Ramos and Viloria.

16. Hedian's two sons – one of whom wielded a long kitchen knife – busted into Ramos and Viloria's room, slashed Viloria's hand with the knife, and smashed a glass object on his head.

17. Hedian followed her sons to the room.

18. As the sons continued to attack, Ramos tried to record the attack on her phone, but one of the sons (and /or Hedian) grabbed her phone, and that son also grabbed Viloria's phone and ran out of the Apartment with the phones.

19. Meanwhile, after the long kitchen knife ripped into Viloria's hand, Viloria was able to twist away and run out of the room and Apartment with Ramos.

20. Hedian and one of her sons (named Oliver Hedian Rodas ["Oliver"]) remained in the Apartment and concealed the long knife.

21. Ramos went to a neighbor and called the police.

22. Viloria went outside to catch his breath.

23. Other neighbors were outside and had seen one of Hedian's sons (with the phones) leaving the scene before the police arrived.

24. When the individual defendants arrived, they saw Viloria's bleeding, lacerated hand, head, and body

25. Viloria, who had glass caught in his scalp and lacerations around his body (he was shirtless), explained how he had been attacked and slashed in the Apartment by his landlord Hedian's two sons, how she sent them to beat him up, and how one of the attackers ran away with his and Ramos' phones.

26. Inside the apartment building, the defendant officers met Ramos, who, in a tearful and distressed state, indicated that she called the police, and explained how she and Viloria had been attacked by Hedian's two sons.

27. Ramos led the officers to the Apartment.

28. When the defendant officers knocked on the Apartment door, Hedian opened the Apartment door, and the defendant officers observed no injuries on her or on Oliver.

29. Hedian and Oliver conveniently and incredibly claimed that Ramos and Viloria violently attacked them. Their stories were obviously bogus, inconsistent, and clearly rooted in their desire to get out of trouble and put Ramos and Viloria in trouble.

30. There were no injuries or other corroborating signs of their false story – and anyone with common sense – having just seen Viloria's bloodied, lacerated state, as compared to Hedian and Oliver's unscathed state – could see it was patently obvious that Hedian and Oliver fabricated their bogus story to cover up their illegal, violent conduct.

31. Oliver claimed, for example, that Viloria struck him in the face with a bottle – but there was no sign of any such assault.

32. Both Hedian and Oliver refused medical attention.

33. Viloria, by contrast, needed to be hospitalized to get stitches and treat his excruciating pain.

34. EMS personnel were at the scene evaluating Viloria's wounds and helping to remove glass from his head.

35. Based on Hedian's and Oliver's obviously false accounts – and without asking them basic questions (e.g. questions about the knife, Viloria's stab wounds, the escaped son, why Oliver was inside Plaintiff's room), without exercising any critical scrutiny,

without gathering information from neighbors, without looking at footage from security videos (which were located at the building's entrance), without trying to track down the escaped son, without investigating the scene of the attack, without conducting anything that could be described as a reasonable investigation – the defendant officers decided to arrest Ramos and Viloria for assaulting Hedian and her son Oliver.

36. Various neighbors were present at the scene and had relevant information (including about Hedian's escaped thuggish son [who, upon information and belief, remains apprehended] and relevant background information regarding Hedian's longstanding animus toward Plaintiff) – but the defendant officers had no interest in speaking with them to learn such information.

37. Although the officers knew Ramos and Viloria were innocent victims, they arrested them in accordance with the NYPD's widespread custom and practice of arresting innocent civilians without adequate investigations simply because other civilians level criminal accusations against them – as if a mere accusation were sufficient to justify an arrest.

38. Indeed, the defendant officers admitted as much when Viloria and Ramos, insisting they had been attacked in their own room and shouldn't be arrested, were told in response: "They said you assaulted them, so *we have to arrest you*."

39. The defendant officers arrested Hedian and Oliver as well, explaining that because everyone was making accusations against each other, everyone had to be arrested.

6

40. When the slashed, bleeding Viloria complained it wasn't right that his attackers could get him arrested by simply making a false accusation, PO Lopezestevez added, "Our job is to arrest you and let the courts figure it out."

41. Viloria was taken, under arrest, to the hospital where he received stitches to his cut hand and head.

42. He was then transported to the 33rd Precinct, where he was booked and processed.

43. After hours in the holding cells, Viloria was taken to Central Booking in lower Manhattan where he continued to be detained in holding cells.

44. His physical pain was so excruciating as the pain medication wore off that he had to be taken again to the hospital for additional treatment.

45. After approximately forty-eight hours in custody, Viloria was arraigned in New York County Criminal Court, charged under Docket No. CR-013441-21NY with assault in the third degree and criminal obstruction of breathing or blood circulation, for allegedly striking Oliver Hedian Rodas "about the face with a bottle, thereby causing a cut to his nose" and applying "pressure to his neck, thereby causing a laceration to the right side of his neck."

46. The defendant officers knew that Oliver had no such cuts or lacerations.

47. Viloria was released on his own recognizance but was ordered to return to New York County Criminal Court on a future court date; otherwise, the Court threatened, a warrant for his arrest would be issued.

48. Viloria made all required court appearances.

49. On October 6, 2021, all charges against Viloria were dismissed.

50. At no point did the individual defendant officers obtain, or attempt to obtain, any video footage from the security videos outside the apartment building; and at no point did any of the individual officers alert the Manhattan DA's Office to the presence of that video camera.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

51. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

52. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

53. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

54. Upon information and belief, the individual defendants' aforementioned abuse of power was not an isolated event. There were other instances of misconduct by the individual defendants that Defendant City knew or should have known about.

55. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**DAMAGES**

56. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

    b. Loss of liberty;

    c. Emotional distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**False Arrest Under Section 1983**

57. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

58. By the actions described above, Defendants deprived Plaintiff of his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free from false arrest.

59. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

60. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Malicious Prosecution Under Section 1983

61. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

62. By the actions described above, Defendants deprived Plaintiff of his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free from malicious prosecution.

63. As detailed above, the individual defendants intentionally and maliciously initiated a criminal prosecution against Viloria without probable cause – a prosecution that terminated in Plaintiff's favor when all criminal charges against him were dismissed.

64. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

65. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

66. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

67. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

68. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Municipal Liability Under Section 1983

69. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70. By the actions described, the Defendant City deprived Plaintiff of his Constitutional rights through the NYPD's custom and policy of making arrests based purely on civilian accusations without adequate investigations.

71. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a. An order awarding compensatory damages for Plaintiff Justin Viloria in an amount to be determined at trial;

    b. An order awarding punitive damages in an amount to be determined at trial;

    c. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d. Such other and further relief as this Court may deem appropriate.

DATED:   May 5, 2024
              New York, New York

                                            CYRUS JOUBIN, ESQ.
                                            43 West 43rd Street, Suite 119
                                            New York, NY 10036
                                            (703) 851-2467
                                            joubinlaw@gmail.com
                                            Attorney for Justin Viloria